UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-234-RJC
(3:08-cr-134-RJC-DSC-18)

| | |
|---|---|
| JOHNNY ELIAS GONZALEZ, | |
| Petitioner, | |
| vs. | ORDER |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Motion to Dismiss and Response to Motion to Vacate, (Doc. No. 11), and on Petitioner's "Motion to Stay Proceeding and Requesting Permission to File Interlocutory Appeal for Denial of Transcripts at the Government's Expense," (Doc. No. 14).

I. BACKGROUND

1. Petitioner's offense conduct

Beginning in the early 2000s, law enforcement officers began investigating the MS-13 street gang and its criminal activities in Charlotte and surrounding areas. (Criminal Case No. 3:08-cr-134-RJC-DSC-18, Doc. No. 1326 at 4: PSR). During Petitioner's participation as a member in the gang, members committed murders and robberies, trafficked in controlled substances, and committed numerous other attempted and completed acts of violence and intimidation. (Id.). Petitioner attended gang meetings, during which members conducted business, such as "beating in" new members, collecting "taxes," meting out discipline, and

1

planning. (Id. at 5).

As part of their ethic of violence and control during the time period of the charged racketeering conspiracy, Charlotte MS-13 members committed at least four murders. (Id. at 4). The first occurred on August 6, 2005, during one of the many robberies Rony Lopez ("Rony"), one of the Government's witnesses at Petitioner's trial, committed with Petitioner. (Id. at 12-13). During the robbery, Petitioner approached the victim with a knife and another co-conspirator nicknamed Osi approached him with a gun, while Rony waited in the car and served as a look-out. (Id.). After the victim pulled a knife, Osi shot and killed him. (Id.). In addition to committing these robberies, Petitioner also sold ecstasy, cocaine, and marijuana on behalf of the gang, and regularly possessed firearms, including a sawed-off shotgun, an Uzi, and pistols. (Id. at 11; 14; Doc. No. 1494 at 27-28: Trial Tr.).

2. Petitioner's conviction and sentence

On July 27, 2009, Petitioner was indicted by the grand jury and charged with membership in MS-13, as well as conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d). (Id., Doc. No. 623: Third Superseding Indictment). Petitioner's case and that of five of his co-defendants was tried before an anonymous jury, which convicted Petitioner of the racketeering offense. (Id., Doc. No. 845: Jury Verdict). In addition to finding Petitioner guilty of the racketeering offense, the jury also found specifically that Petitioner's agreement to participate in the racketeering organization included the murder of Yonni Alexander Morales-Maradiago, the victim of the robbery committed by Petitioner, Osi, and Rony. Id.

In preparation for Petitioner's sentencing hearing, the probation office submitted a Presentence Report ("PSR"), in which the probation officer calculated a total offense level of 43, based on a cross-reference to the first-degree murder guideline, see U.S.S.G. §§ 2B3.1(c)(1),

2

2A1.1, and a criminal history category of II, resulting in an advisory Sentencing Guidelines term of life in prison. (Id., Doc. No. 1326 at 20; 32: PSR). Petitioner objected to the application of the murder cross-reference, asserting that he did not kill Morales. (Id. at 38).

During Petitioner's sentencing hearing, this Court overruled Petitioner's objections to his sentence but ultimately imposed a downward-variance sentence of 360 months, finding that, in light of Petitioner's youth when he committed the offense of conviction and the robbery that resulted in Morales's death, a downward-variance sentence was warranted. (Id., Doc. No. 1412: Judgment; Doc. No. 1413: Statement of Reasons). Petitioner appealed, challenging the sufficiency of the evidence against him, the empaneling of an anonymous jury, and the failure of the Court to give an instruction on multiple conspiracies. The Fourth Circuit affirmed this Court's judgment in an unpublished opinion on May 14, 2013. United States v. Fernandez, 526 F. App'x 270 (4th Cir. 2013).

Petitioner placed the instant motion to vacate in the prison mail system on April 27, 2014, and it was stamp-filed in this Court on May 6, 2014. Petitioner contends in the motion to vacate that he is entitled to relief based on ineffective assistance of trial counsel and under Alleyne v. United States, 133 S. Ct. 2151 (2013).

**II.  STANDARD OF REVIEW**

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

3

## III. DISCUSSION

### A. Ineffective Assistance of Counsel Claim

Petitioner first asserts that his trial counsel Harold Bender rendered ineffective assistance of counsel during the plea-bargaining process because he told Petitioner "that the only way that he could enter into a 'guilty plea agreement' with the government was if he would co-operate with the government" and testify at trial. (Doc. No. 1 at 22). Petitioner asserts that "if he was advised that he could take a guilty plea without providing cooperation with the government, . . . he would have taken the guilty plea for 10 years." (Id.). For the following reasons, this claim is without merit.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced Petitioner. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The two-part Strickland v. Washington test applies to ineffective assistance of counsel claims arising out of the plea-bargaining process. See Missouri v. Frye, 132 S. Ct. 1399, 1386-87 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985). In Frye and Lafler, the Supreme Court recently examined the application of the Strickland test in the plea-bargaining process. The Court held in these companion cases that counsel's failure to communicate a formal plea offer to his client constitutes deficient performance as a matter of law. Furthermore, to establish prejudice the defendant has to show "not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." Frye, 132 S. Ct. at 1410-11.

Petitioner's ineffective assistance of counsel claim is without merit because he has not shown by any competent evidence that counsel Bender made any misleading or false statements to Petitioner as to a guilty plea.[1] First, as to Petitioner's contention that he would have pled guilty as long as he did not have to cooperate with the Government, any plea offer would most certainly have required Petitioner's full cooperation with the Government. Next, with respect to Petitioner's claim that he would have pled guilty in exchange for a ten-year sentence, there is no evidence in the record, nor any fair inference that can be drawn from the record, that Petitioner ever faced the possibility of securing a ten-year sentence through a guilty plea. The evidence in this case established that Petitioner knowingly participated in a robbery that resulted in the

---

[1] The Government has noted in its Response that trial counsel Bender is deceased and therefore cannot provide an affidavit attesting to how he advised Petitioner with respect to any plea offer.

5

victim's death, and the jury found that Petitioner knowingly participated in that robbery. The evidence also established that Petitioner participated in a violent racketeering organization, regularly possessing a firearm and buying and selling controlled substances during the course of his participation in MS-13. Based on the evidence established at trial, Petitioner's advisory guideline sentence was life in prison. Petitioner does not explain how he could have reasonably expected a sentence of ten years, regardless of whether he entered a guilty plea. Having shown neither deficient representation nor prejudice, Petitioner's ineffective assistance of counsel claim fails.

### B. Alleyne Claim

As his next ground for relief, Petitioner contends that he is entitled to relief under the Supreme Court's decision in Alleyne v. United States. In Alleyne, the Supreme Court held that any fact, other than a prior conviction, that increases the mandatory minimum sentence for a crime is an "element" of the criminal offense that must be proven beyond a reasonable doubt by submission to the jury. See Alleyne, 133 S. Ct. at 2160 n.1, 2163. Petitioner contends that his Sixth Amendment right to a jury trial was violated under Alleyne because this Court made, by a preponderance of the evidence, various findings that raised his base offense level from 19 points to 43 points, thus, "exposing him to a new penalty of 360 months to life imprisonment." (Doc. No. 1 at 16).

Petitioner is not entitled to relief under Alleyne. The Supreme Court resolved Alleyne on direct, rather than collateral review, and it did not declare that its new rule applied retroactively on collateral attack. Indeed, Alleyne is an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000). The Supreme Court has decided that other rules based on Apprendi do not apply retroactively on collateral review, and the Supreme Court has not held that Alleyne is retroactive

6

on collateral review. See Schriro v. Summerlin, 542 U.S. 348 (2004); see also United States v. Stewart, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (noting that "Alleyne has not been made retroactively applicable to cases on collateral review"); Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013) (same); United States v. Potter, No. 7:03-21-DCR, No. 7:13-7290-DCR, 2013 WL 3967960, at *3 (E.D. Ky. July 31, 2013) (citing cases and concluding that "the rule announced in Alleyne does not qualify as a watershed rule of criminal procedure" and noting that "[a] number of other district courts considering the matter have reached a similar conclusion"). Because Alleyne has not been held to apply retroactively on collateral review, Petitioner cannot obtain relief under Alleyne.

In any event, Petitioner's Alleyne claim fails as a matter of law because he was not subject to any statutory mandatory minimum based on a fact not found by the jury in this case. Although Petitioner's offense level was increased based on his having participated in a robbery that included a murder, the increase in his offense level did not make him subject to a statutory mandatory minimum term of imprisonment, as was addressed in Alleyne, a point established by the fact that this Court ultimately sentenced Petitioner below the advisory Guideline term of life. The Alleyne Court stated that its holding did not disturb judicial fact-finding at sentencing for facts that do not impact the statutory punishment.[2] Alleyne, 133 S. Ct. at 2161 n.2. Here, the findings that Petitioner challenges affected only the advisory guideline calculations and not the statutory mandatory minimum punishment. Accord United States v. Anderson, 532 F. App'x 373, 379 n.1 (4th Cir. 2013) (unpublished) ("Alleyne involves the application of mandatory

---

[2] In any event, as the Court has already noted, the jury did specifically make a finding in the verdict that Petitioner's agreement to participate in the racketeering organization included the murder of the victim of a robbery committed by Petitioner and others.

7

minimum sentences and is not relevant to the advisory Guidelines enhancement dispute here.").

In sum, for the reasons stated herein, Petitioner is not entitled to relief under Alleyne.

### IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2225 petition is denied and dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 petition, (Doc. No. 1), is **DENIED** and **DISMISSED**. To this extent, the Government's Motion to Dismiss, (Doc. No. 11), is **GRANTED**.

2. Petitioner's "Motion to Stay Proceeding and Requesting Permission to File Interlocutory Appeal for Denial of Transcripts at the Government's Expense," (Doc. No. 14), is **DENIED**.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Robert J. Conrad, Jr.
United States District Judge